UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| DOYCE WILLIAMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:06-CV-259-C |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

Plaintiff Doyce Williams seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Because Williams did not consent to the jurisdiction of the United States Magistrate Judge, pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation recommending that the District Court affirm the Commissioner's decision.

**I.      Standard of Review**

Under the statutory directives of 42 U.S.C. § 405(g), the reviewing court must determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

The Commissioner's decision must be affirmed if supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). In reaching its determination, the court may not reweigh the evidence, try questions *de novo*, or substitute its judgment for that of the Commissioner; however, the court must scrutinize the entire record to ascertain whether substantial evidence is present to support the Commissioner's findings. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) (citation omitted).

## II.   Statement of the Case

Williams filed her claim for DIB on June 17, 2004, alleging that she had been disabled since December 31, 1996. (Tr. 19, 102.) It was determined that Williams' insured status expired on June 30, 1997. (Tr. 19, 102.) The claimant's insured status is a threshold issue in DIB claims; a claimant is not entitled to DIB unless he establishes that he was disabled on or before the date he was last insured. *See Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (citing *Ivy v. Sullivan,* 898 F.2d 1045, 1048 (5th Cir. 1990) (claimant bears the burden of establishing a disabling condition before the expiration of his insured status)); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1). Therefore, the Administrative Law Judge (ALJ) was required to determine whether Williams was disabled during the six-month period between December 31, 1996, the date on which she claims she became disabled, and June 30, 1997, the date on which she was last insured and eligible to receive DIB. 42 U.S.C. § 423(a)(1).

Williams was thirty-seven years old on December 31, 1996, the date on which she claimed she became disabled. (Tr. 102.) She claimed she suffered from failed back syndrome, nerve damage in her legs, and depression and that these impairments limited her

ability to work.  (Tr. 104.)  Prior to filing her application for DIB, Williams suffered an injury at work on May 11, 1991, when a rack of clothing estimated to have weighed 150 pounds tipped over on top of her.  (Tr. 133, 137, 232.)  Thereafter, diagnostic testing showed moderate central bulging at the L4-5 station in her spine and she underwent a decompression laminectomy and bilateral foraminectomy at the L5 nerve root on August 16, 1991.  (Tr. 258, 265, 268-69.)  On February 16, 1992, she underwent the same procedure at the S1 nerve root.  (*Id.*)  Thereafter, she complained of pain and muscle spasms and was treated with prescription medications, which made her pain "more tolerable." (Tr. 118, 256-58.)  On March 31, 1997, a few months before her insured status expired, Williams reported to a consulting and examining physician that she experienced pain that awakened her at night but that with the use of a heating pad and medication, she experienced marked relief which reduced her pain to a level of 2 to 3 on a scale of 0 to 10 for approximately four hours at a time.  (Tr. 258.)  At that time, Williams "regularly [went] to the YWCA to participate in warm water aerobics" and was able to "complete the majority of her household tasks," although vacuuming was uncomfortable and "mopping bother[ed] her lower back mildly."  *Id.*

The ALJ relied on this and other evidence and determined that between December 31, 1996, and June 30, 1997, Williams was capable of performing sedentary work existing in the national economy.  (Tr. 24-25.)  Williams brings a single issue for the court's review.  She argues the ALJ erred as a matter of law because he failed to analyze whether her impairments met the criteria of listing 1.04B in the Commissioner's regulations.

**III.     Discussion**

The Commissioner employs a five-step sequential disability evaluation to determine whether the claimant meets the definition of "disabled," as that term is defined in the Social Security Act. 20 C.F.R. § 404.1520(a) (2006). At issue in this case is the analysis employed at the third step of the evaluation. At that step the ALJ determines whether the medical severity of the claimant's impairment meets or equals the criteria of one of the listed impairments in appendix 1 of subpart P in the Commissioner's regulations and whether the impairment has lasted or can be expected to last at least twelve months. 20 C.F.R. § 404.1520(a)(5)(iii). If it is determined that the claimant's impairments meet both the criteria of a listed impairment and the twelve month requirement, disability is presumed and the evaluation ends in the claimant's favor. 20 C.F.R. § 404.1520(d); *see Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000) (disability is conclusively presumed if a claimant's impairments meet or equal the criteria of one of the listed impairments in the Commissioner's regulations). A claimant will not be presumed disabled under a listing in the Commissioner's regulations unless the medical evidence shows that his impairments and symptoms meet each of the specified criteria of the listing at issue. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). Williams argues her spinal impairment met the criteria for listing 1.04B, the listing for spinal arachnoiditis, and complains that the ALJ referenced criteria in listing 1.04A but did not discuss whether her spinal impairment met the criteria of listing 1.04B and did not articulate reasons for finding that she did not meet the criteria of the listing. She claims the ALJ's failure to analyze

4

whether her spinal impairment met the criteria of listing 1.04B was an error of law warranting reversal and argues that principles of administrative law require the ALJ to rationally articulate the grounds for his decision.

Williams' arguments do not require remand. First, the fact that the ALJ did not specifically discuss whether Williams' spinal impairment met the criteria of listing 1.04B is not reversible error. Second, Williams has not shown that her spinal impairment met the criteria of listing 1.04B or any other listing.

Although the Fifth Circuit Court of Appeals has not addressed whether the ALJ must specifically articulate reasons for his step three determination, the Eighth Circuit Court of Appeals has rejected such an approach. *See Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) (rejecting claimant's argument that the ALJ must make specific findings as to whether a claimant's impairment meets the criteria of a listing in the regulations). The Fifth Circuit Court of Appeals has, in the context of credibility determinations, rejected an approach that would require the ALJ to "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). In *Falco*, the court held that specific articulation is necessary only when the evidence clearly favors the claimant. *Id*. In this case, the evidence does not favor a finding that Williams' spinal impairment met the criteria of Listing 1.04B. In addition, it should be noted that this circuit's precedent requires the court to determine whether the record, as developed, contains substantial evidence to support the Commissioner's final decision, *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); the court must review the record in its entirety to make this

5

determination, *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). After doing so, this court has found that the ALJ indicated that he considered the evidence regarding Williams' spinal impairment and found that her impairment did not meet the criteria of any listing. This determination as well as the ALJ's ultimate finding of non-disability is supported by substantial evidence.

The claimant bears the burden of providing medical findings that show that his impairment(s) meet or equal each of the specified medical criteria of a listing. *Selders*, 914 F.2d at 619. Williams has not met this burden. The impairments included under listing 1.04 are disorders of the spine. To meet the criteria of one of the impairments under this listing, the claimant must first present medical findings that he has a disorder of the spine, such as spinal arachnoiditis, spinal stenosis, osteoarthritis, or degenerative disc disease that results in the compromise of a nerve root or the spinal cord. 20 C.F.R. pt. 404. subpt. P, app. 1, § 1.04. He must then show with medical findings that he meets the second criteria of the listing – that there is evidence that he suffers from either nerve root compression (listing 1.04A); spinal arachnoiditis (listing 1.04B); or lumbar spinal stenosis that results in pseudoclaudication (listing 1.04C). *Id.* Williams does not cite evidence that would show that her spinal impairments met the first criteria – that her impairments resulted in the compromise of a nerve root or the spinal cord. Nonetheless, she claims she suffers from spinal arachnoiditis,[1] the spinal condition under listing 1.04B. In order to meet the criteria

---

[1] The regulations define spinal arachnoiditis as a condition characterized by adhesive thickening of the arachnoid membrane that surrounds the spinal cord and other areas within the vertebral canal. *See* 20 C.F.R. pt. 404. subpt. P, app.

of listing 1.04B, she must show with medical evidence "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." 20 C.F.R. pt. 404. subpt. P, app. 1, § 1.04B.

Williams claims radiological studies indicate that she suffered from arachnoiditis and cites medical records on pages 265 and 271 of the transcript. Page 265 is a page from an opinion dated May 20, 1997, and provided by Mark E. Huff, Jr., M.D., an orthopedic surgeon who reviewed Williams' treatment history and provided a recommendation in regard to her future treatment regime.[2] (Tr. 264-66.) On the page at issue, Dr. Huff discussed Williams' treatment history and summarized treatment and testing from one of her physicians, Robert Peinert, M.D. (Tr. 265.) Dr. Huff noted that Dr. Peinert had ordered a CAT scan in 1996 and that the scan "suggested local arachnoiditis." (Tr. 265.) The transcript includes a record which shows that Dr. Peinert ordered a myelogram and post myelographic CAT scan on February 21, 1996, in order to evaluate Williams for probable spinal stenosis and to determine whether surgical decompression and stabilization were appropriate. (Tr. 115.) There is no record from Dr. Peinert diagnosing Williams with arachnoiditis and there is no indication that Dr. Huff reviewed the CAT scan he referenced; rather, it appears that he was

---

1, § 1.00K(2); *see also* STEDMAN'S MEDICAL DICTIONARY 118-19 (27th ed. 2000).

[2] It appears a review service for an insurance carrier requested Dr. Huff's opinion because Williams' former employer was copied on the letter. (Tr. 264.)

summarizing another physician's notes. (Tr. 265.) In fact, Dr. Huff's concluding recommendation was that Williams be thoroughly evaluated in order to make a definitive diagnosis of osteopetrosis versus osteofluorosis. (Tr. 264.) Subsequently, it was determined that Williams did, in fact, suffer from osteopetrosis, which is described as a thickening of the bones. (Tr. 137, 289.)

It should be noted that although Williams was evaluated and treated by a number of physicians and underwent a number of diagnostic tests between 1991 and 2005, there is no direct evidence in the record that a diagnosis of arachnoiditis was suggested or affirmed by diagnostic testing. (*See* Tr. 123-24, 137, 148, 157, 199, 233-34, 256, 261-64, 267-69, 271, 289.) In light of the foregoing, Dr. Huff's secondhand comment regarding another physician's notes is not competent medical evidence that would establish a diagnosis of arachnoiditis; a suggestion of a condition does not equate to an affirmative diagnosis.

Page 271 consists of findings from a CT scan of Williams' lumbar spine. (Tr. 271.) The findings show postlaminectomy changes, circumferential annular bulging, calcification of the annulus fibrosis,[3] extensive hypertrophic facet joint disease, and lateral spinal stenosis. There is no indication in the findings from the scan that Williams had arachnoiditis. *See id*. Finally, there is no evidence in the records that would establish that she meet the final criterion of listing 1.04B, severe burning or painful dysesthesia that resulted in a need to

---

[3] The annulus fibrosis is the outer portion of the intervertebral disc and is made of layers of collagen fibers that lie in circumferential layers around the nucleus pulposus and adjacent to other vertebral bodies while the arachnoid covers and encloses the spinal cord itself. See North American Spine Society, http://www.spine.org/fsp/glossary.cfm (last visited May 8, 2007) and arthritis treatment and relief.com, http://www.arthritis-treatment-and-relief.com/forearm-pain-neck.html (last visited May 8, 2007).

change positions or posture every two hours. Williams claims the evidence shows that she experienced burning and numbing pain and points to notations that she could only drive her car for 15 to 20 minutes before needing to take a break to walk and that her pain awakened her at night. (*See* Tr. 258.) These notations, however, do not indicate that Williams' pain resulted in the need to change positions or her posture every two hours.

The claimant bears the burden of showing with evidence that he meets each of the criteria of a listed impairment. *Selders*, 914 F.2d at 619. Williams has not met this burden. For this reason and because the ALJ's decision is supported by substantial evidence, her appeal is without merit. (*See, e.g.,* Tr. 21, 258.)

**IV.     Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Williams' appeal with prejudice.

**V.      Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: May 17, 2007.

_____
NANCY M. KOENIG
United States Magistrate Judge